

Tagged Opinion

**ORDERED in the Southern District of Florida on March 30, 2009.**

Laurel M. Isicoff, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE:                                                CASE NO.  08-15360-BKC-LMI

MARCOS SANTIAGO,                                      Chapter 13

          Debtor.

_____/

### PRELIMINARY ORDER ON MOTION TO VALUE COLLATERAL, MOTION TO DETERMINE SECURED STATUS AND MOTION TO AVOID LIEN

This matter came before me on January 21, 2009 on Debtor's Motion to Avoid Lien with SunTrust Bank, SunTrust Bank N.A., SunTrust Mortgage, Inc., Motion to Value Collateral With SunTrust Bank, SunTrust Bank N.A., SunTrust Mortgage, Inc., Motion to Determine Secured Status of SunTrust Bank, SunTrust Bank N.A., SunTrust Mortgage, Inc. (DE #49) (the "Motion to Value") and the Objection to the Motion to Value (DE #61) (the "Objection") filed by SunTrust Bank, SunTrust Bank N.A., and SunTrust Mortgage, Inc.  (collectively "SunTrust").[1] Because the Motion to Value presents the threshold issue of whether 11 U.S.C. §1322(b)(2) prohibits the Debtor from seeking the relief in the Motion to Value, I set a preliminary

---

[1] There is some discrepancy between the name of the lender on the proof of claim ("SunTrust Bank, N.A. c/o SunTrust Mortgage, Inc."), the name of the lender on the Objection ("SunTrust Bank, N.A."), and the name of the lender on the loan documents ("SunTrust Mortgage, Inc."). Debtor argues there is no such entity as SunTrust Bank, N.A. However, based on representations of lender's counsel at trial, I overruled the Debtor's objection that the appearing party did not have standing to prosecute the Objection.

evidentiary hearing on the issue of whether the claim held by SunTrust is secured solely by the Debtor's primary residence.  For the reasons set forth below, I find that SunTrust's lien is not protected by 11 U.S.C. §1322(b)(2). Accordingly the Motion to Value will be scheduled by separate order for evidentiary hearing.

## JURISDICTION

I have jurisdiction of this matter pursuant to 28 U.S.C. §§1334(b) and 157(b).  This is a core proceeding pursuant to 28 U.S.C. §157(b).  The following are my findings of fact and conclusions of law following a trial conducted pursuant to Fed. R. Civ. P. 52, as made applicable to these proceedings by Fed. R. Bankr. P. 7052.

## FACTS

On or around March 15, 2007, Marcos Santiago ("Santiago" or the "Debtor") executed a promissory note in the principal amount of $194,751 (the "Note") in favor of SunTrust Mortgage, Inc.  Simultaneously, as security for the Note, Santiago executed a mortgage (the "Mortgage") encumbering real property located in Lehigh Acres, Florida (the "Lehigh Acres Property").  Attached to the Mortgage was a Second Home Rider that provides as a covenant by Santiago to SunTrust that "Borrower shall occupy, and shall only use, the Property as Borrower's second home."

On October 10, 2007, apparently when construction was completed of the home located on the Lehigh Acres Property, SunTrust and Santiago entered into a Loan Modification Agreement (the "Modification Agreement").  The Modification Agreement made certain changes to the payment terms of the Note. The Modification Agreement specifically provided that, except as specifically altered by the Modification Agreement, Santiago as Borrower "will comply with

all other covenants, agreements and requirements of the Note and [Mortgage]. . ."  Nothing in the

Modification Agreement altered the terms of the Second Home Rider.  Nor did Santiago execute

any other document that modified the terms of the Second Home Rider.

At some point Santiago did move into the Lehigh Acres Property, but did not stay there

for very long.[2]

Santiago filed for protection under chapter 13 of the Bankruptcy Code on April 29, 2008

(the "Petition Date").  In his petition, the Debtor identified his county of residence as Miami-

Dade County and his address as 660 SE 1st Street, Homestead, Florida (the "Homestead

Property").  The Debtor scheduled three properties on his Schedule A – the Lehigh Acres

Property, the Homestead Property, and property located in Cape Coral, Florida (the "Cape Coral

Property").   The SunTrust debt is scheduled in the amount of $202,303. None of the three

properties was claimed as exempt on the Debtor's Schedule C.

The Debtor filed his Chapter 13 Plan on May 11, 2008 (DE #13). In the Plan the Debtor

proposes to reduce the amount of the SunTrust claim to $90,000, the asserted value of the Lehigh

Acres Property.  The Plan proposes to surrender the Cape Coral Property and the Homestead

Property to the lenders holding the mortgages.[3]  In fact, stay relief orders have been entered with

respect to both of those properties (DE #45; DE #58).   SunTrust filed an objection to

confirmation of the Plan (DE #31).

SunTrust filed a proof of claim on August 6, 2008, asserting that SunTrust holds a

secured claim, as of the Petition Date, of $205,732.17.  The Debtor filed an objection to the

---

[2] In Santiago's Statement of Financial Affairs he listed the Lehigh Acres Property as a prior address from 12/07 to 3/08. However in at least one pleading (DE #89), Debtor's counsel represented that Debtor and his daughter resided at the Lehigh Acres Property from late September/early October for approximately six weeks.
[3] The Debtor filed a First Amended Plan on August 19, 2008 (DE # 40) and a Second Amended Chapter 13 Plan on October 12, 2008 (DE # 48).  The amended plans did not change the proposed treatment of SunTrust or the surrender of the Cape Coral Property and Homestead Property.

claim (DE #34)[4] and on October 12, 2008, simultaneous with filing the Second Amended

Chapter 13 Plan, the Debtor filed the Motion to Value.  SunTrust filed responses to the objection

to claim (DE #73) and to the Motion to Value (DE #61) raising the same issues that are raised in

SunTrust's objection to confirmation, that is, that because the Lehigh Acres Property is the

Debtor's principal residence, section 1322 prohibits modification of the Mortgage.

The evidentiary hearing took place on January 21, 2009, however, the Debtor did not

appear to testify; he was apparently caught in traffic.[5]  Thus the findings I have made are based

on the admitted documentary evidence, as well as matters in the docket of which, at the request

of SunTrust, I agreed to take judicial notice.

## DISCUSSION

In order to confirm a chapter 13 plan, a debtor must satisfy all the requirements of 11

U.S.C. §1325. Section 1325(a)(5) provides that the chapter 13 plan ─

> (5) with respect to each allowed secured claim provided for by the plan –
>     (A) the holder of such claim has accepted the plan;
>     (B)(i) the plan provides that –
>         (I) the holder of such claim retain the lien securing such claim until the earlier of ─
>         (aa) the payment of the underlying debt determined under nonbankruptcy law; or
>         (bb) discharge under section 1328; and
>         (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
>     (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
>     (iii) If –
>         (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and

---

[4] Debtor filed an amended objection to SunTrust's claim on January 18, 2009 (DE #86) to include the standing issue.
[5] SunTrust did not subpoena the Debtor for trial.

> (II) the holder of the claim is secured by personal property, the amount
> of such payments shall not be less than an amount sufficient to
> provide to the holder of such claim adequate protection during the
> period of the plan; or
>
> (C) the debtor surrenders the property securing such claim to such holder;

11 U.S.C. §1322(b)(2) provides that a chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured by a security interest in real property that is the debtor's principal residence ..."  11 U.S.C §101(13A) defines "debtor's principal residence," somewhat unhelpfully, as "a residential structure, including incidental property, without regard to whether that structure is attached to real property; …".  As a general rule, courts have interpreted the debtor's principal residence as the debtor's home.  *See Nobleman v. Am. Sav. Bank*, 508 U.S. 324, 331 (1993) (Stevens, J., concurring).

The Motion to Value, the objection to claim, and the objection to confirmation all center around the issue of whether the Lehigh Acres Property was the Debtor's principal residence.  If the answer is "yes," the value of the Lehigh Acres Property, the crux of the three pleadings, is irrelevant, as the Debtor could not bifurcate the claim in accordance with 11 U.S.C. §506, and the SunTrust claim would have to be paid in accordance with the Mortgage. The resolution of this issue in SunTrust's favor would resolve the objection to claim (other than the standing issue) in favor of SunTrust, and the objection to confirmation in favor of SunTrust, and there would be no need for further hearing on the value of the Lehigh Acres Property.

Although the Debtor's petition listed the Homestead Property as his residence, SunTrust argues that the Lehigh Acres Property is the Debtor's principal residence because the Debtor's schedules reflect that the Debtor lived at the Lehigh Acres Property until a month before the filing, the Debtor's schedules show his monthly income could not pay all three mortgages, and the Debtor's Second Amended Plan indicates the Debtor is surrendering (and by now, has

5

surrendered) the Cape Coral Property and the Homestead Property.  At the evidentiary hearing SunTrust also suggested the Debtor might have been living at the Lehigh Acres Property on the Petition Date but submitted no evidence to support that assertion.

The determination of whether the Lehigh Acres Property is the Debtor's principal residence such that the Mortgage cannot be modified is dictated in part by the date at which the determination must be made, and in part by which party bears the burden of proof on the issue of the application of the section 1322(b)(2) exception to the Mortgage.

There are two possible dates at issue here:  the date when the loan evidenced by the Note and Mortgage was made (the "Mortgage Date"), or the Petition Date.[6] There is a split of authority on the issue of which date should apply when determining the applicability of the exception to section 1322(b)(2).  *Compare Scarborough v. Chase Manhattan Mortg. Corp. (In re Scarborough),* 461 F.3d 406 (3d Cir. 2006); *In re Bulson,* 327 B.R. 830 (Bankr. W.D. Mich. 2005) (mortgage date is the critical date) *with Wells Fargo Bank, N.A. v. Jordan (In re Jordan),* 330 B.R. 857 (Bankr. M.D. Ga. 2005); *Jackson v. United States Dep't of Agric. (In re Jackson),* 318 B.R. 229 (Bankr. M.D. Ga. 2004) *rev'd on other grounds,* 2005 WL 1563529 (M.D. Ga. 2005); *In re Howard,* 220 B.R. 716 (Bankr. S.D. Ga. 1998); *In re Lebrun,* 185 B.R. 665 (Bankr. D. Mass. 1995); *In re Dinsmore,* 141 B.R. 499 (Bankr. W.D. Mich. 1992) (petition date is the critical date).  Because the Eleventh Circuit has not yet ruled on this issue I will look at whether the Lehigh Acres Property was the Debtor's principal residence on either date.

The Lehigh Acres Property was clearly not the Debtor's principal residence when the Mortgage was signed, because there is no dispute that the Debtor was living elsewhere when the Mortgage was signed, and because the Mortgage specifically required the Debtor to occupy the

---

[6] A third possible date would be the confirmation date but neither party suggested, and no court has considered, any date other than the Mortgage Date or the Petition Date is relevant.

Lehigh Acres Property as a second home.[7]  Thus, if the Mortgage Date is the operative date, the

Mortgage may be altered pursuant to section §1332(b)(2).

The determination of whether the Lehigh Acres Property was the Debtor's primary

residence on the Petition Date is more problematic.  SunTrust relies on the Debtor's schedules,

the Debtor's Statement of Financial Affairs, the Debtor's Second Amended Plan, and records of

Miami-Dade County in support of its position that the Lehigh Acres Property was Debtor's

principal residence on the Petition Date.  The Miami-Dade County records show that the Debtor

claimed the homestead exemption for the Homestead Property in 2007 but not in 2008.  Thus,

based on these documents, SunTrust asserts the Debtor was probably, or could have been, living

at the Lehigh Acres Property on the Petition Date.

In support of the Debtor's case, and in addition to the Note, Mortgage and Modification

Agreement, the Debtor relies on the deed that conveyed the Lehigh Acres Property to him, the

utility records for the Homestead Property from July 2004 through April 2008, as well as the

records from Lee County. The deed, dated the same day as the Mortgage, lists the Debtor's

address as the Homestead Property.  The utility records for the Homestead Property show that

utilities for which the bills were issued (it is not clear from the printout which utilities are

covered) were terminated by issuing a "final bill on Sept. 26, 2007," but that on November 14,

2007, service was reconnected at the Homestead Property.  The records for Lee County, Florida

show the Debtor's mailing address in 2007 at the Homestead Property address. No tax records

were produced by either party for the Lehigh Acres Property for 2008.

---

[7] Lender's counsel argued that when the Modification Agreement was signed it altered the Second Home Rider, because "that's what always happens," but counsel conceded that nothing in the Modification Agreement altered the covenants of the Second Home Rider and, moreover, counsel conceded there did not appear to be any other documents that altered the obligation.

Case No.  08-15360-BKC-LMI

There is some disagreement among courts regarding which party (the debtor or the creditor) bears the burden of proof in a motion to value collateral, at least when the motion is associated with, or filed as a part of, a chapter 13 plan. *Compare In re Blevins,* 150 B.R. 444 (Bankr. W.D. Ark. 1992) (a creditor objecting to confirmation has the burden of proof on all issues raised in its objection including valuation of collateral) *with In re Finnegan*, 358 B.R. 644, 649 (Bankr. M.D. Pa. 2006) (in connection with valuation of a vehicle in a chapter 13 plan the court noted that "[a] debtor bears the burden of proof on the issue of valuation under §506(a)."); *In re Brown*, 244 B.R. 603 (Bankr. W.D. Va. 2000) (the debtor has the burden of proof on the issue of collateral valuation as one of the requirements for plan confirmation under 11 U.S.C. §1325). *Accord In re Roberts*, 210 B.R. 325 (Bankr. N.D. Iowa 1997).

On a claim objection, if the claim has been filed consistent with Fed. R. Bankr. P. 3001(f), the creditor is entitled to rely on the Rule 3001 presumption, even in the context of a chapter 13 confirmation dispute.  *In re Roberts*, 210 B.R. 325.   However, if the claim is not entitled to the presumption of validity, *In re Taylor*, 363 B.R. 303 (Bankr. M.D. Fla. 2007), or the debtor effectively rebuts the presumption of validity, *In re Brown*, 244 B.R. 603, the burden of proof shifts to the creditor.  *See generally, In re Gurley*, 311 B.R. 910 (Bankr. M.D. Fla. 2001).

The burden of proof on the confirmation of a chapter 13 plan, in the face of validly raised objections, is somewhat less clear.  There is no dispute that a debtor has the burden to prove all elements of 11 U.S.C. §1325 have been satisfied, or contrary treatment consented to, in order to confirm a chapter 13 plan.[8]  *Shaw v. Aurgroup Fin. Credit Union*, 552 F.3d 447 (6th Cir. 2009);

---

[8] While the standard of proof seems generally recognized as "preponderance of the evidence," *Premier Capital Funding, Inc. v. Earle (In re Earle),* 307 B.R. 276 (Bankr. S.D. Ala. 2002); *In re Cook*, 205 B.R. 437 (Bankr. N.D. Fla. 1997); *In re Brown*, 244 B.R. 603; *see generally,* 7 Collier on Bankruptcy, §1129.02[4] (15th ed. rev.),  there are

*Tillman v. Lombard*, 156 B.R. 156 (E.D. Va. 1993); *In re Brown*, 244 B.R. 603, *In re Petrella*, 230 B.R. 829 (Bankr. N.D. Ohio 1999).  There is, however, a split in the courts regarding who has the burden when the creditor raises an objection to confirmation.  *Compare In re Yunker*, 328 B.R. 591 (Bankr. M.D. Fla. 2005); *In re Clements,*185 B.R. 903 (Bankr. M.D. Fla. 1995); *In re Lindsey,*122 B.R. 157 (Bankr. M.D. Fla. 1991)(burden is on the debtor) *with Eastern Savings Bank, FSB v. LaFata* (*In re LaFata)*, 483 F.3d 13 (1ˢᵗ Cir. 2007); *In re Picht,* 396 B.R. 76 (Bankr. D. Kan. 2008); *In re Larios,* 259 B.R. 675 (Bankr. N.D. Ill. 2001); *In re Verdunn*, 160 B.R. 682 (Bankr. M.D. Fla. 1993)(burden is on the objecting creditors).

However, the only courts to specifically address who bears the burden of proof on the applicability of the section 1322(b)(2) exception, including the only circuit court to address the issue, have each held the burden of proof lies with the creditor. *In re Lafata*, 483 F.3d 13; *In re Picht*, 396 B.R. 76; *In re Larios*, 259 B.R. 675; *In re Petrella*, 230 B.R. 829.  *Cf. In re Cross*, 376 B.R. 641 (Bankr. S.D. Ohio 2007) (Creditor had burden of proof on issue of whether the creditor was entitled to the protections of the "hanging paragraph".); *In re Finnegan*, 358 B.R. 644.  *But cf. In re Fletcher*, 2007 WL 1804931 (Bank. S.D. Fla. 2007) (Debtor seeking to confirm a chapter 13 plan has the burden of proof in valuing a vehicle under 11 U.S.C. §506(a), including the burden of proving section 506(a) is applicable notwithstanding the "hanging paragraph").

Because the issue before me today is the threshold legal issue of the applicability of the section 1322(b)(2) exception to the Mortgage, I find the burden of proof is on SunTrust to prove

---

some courts that require proof by clear and convincing evidence, *U.S. v. Woodway Stone Co., Inc.*, 187 B.R. 916 (W.D. Va. 1995);  *In re D & G Invs. of  W. Fla., Inc.*, 342 B.R. 882 (Bankr. M.D. Fla. 2006); *In re Birdneck Apartment Assoc. II,* 156 B.R. 499 (Bankr. E.D. Va. 1993).

that the Lehigh Acres Property was the Debtor's primary residence on the Petition Date, which

burden SunTrust has not met.

The evidence shows that the Debtor consistently claimed the Homestead Property as his

address, and that, except for a period of approximately six weeks (September to November 2007)

someone was living in the Homestead Property.  None of SunTrust's evidence contradicts the

Debtor's evidence – indeed, the petition and the Debtor's schedules (admitted into evidence at

SunTrust's request) support the Debtor's position that the Homestead Property was the Debtor's

home when the petition was filed.

The fact that the Debtor did not claim a homestead exemption for the Homestead

Property in 2008 is not dispositive.  In order for real property to qualify as a homestead it must

be the claimant's principal residence. Fla. Const Art. X, § 4(a)(1).  However, there is nothing in

the Florida constitution that compels someone to claim a homestead exemption for tax purposes

on his or her principal residence.  Moreover, failure to apply for the tax exemption does not

divest someone of his or her right to claim a home as protected by the homestead exemption, as

the constitutional homestead right is not derived from, nor dependent on, the statutory right to

claim the tax exemption.  *See In re Gatto,* 380 B.R. 88, 93 (Bankr. M.D. Fla. 2007). While the

Debtor's decision not to claim the homestead exemption on the Homestead Property in 2008 and

the Debtor's temporary move to the Lehigh Acres Property certainly indicate the Debtor

intended to make the Lehigh Acres Property his home, the evidence supports the Debtor's

position that the move was unsuccessful and that he moved back to the Homestead Property.

While the Debtor apparently has now decided to keep the Lehigh Acres Property, and it is fair to

assume the Debtor now intends to keep this property as his home, there is no evidence in the

record whether the Debtor actually has this intention, or intends to continue to use the Lehigh

Acres Property as a second home as required by the terms of the Mortgage.[9] Furthermore, as I

stated before, no party has suggested, nor does the law provide, that post-petition events have

any bearing on this issue.

## CONCLUSION

Thus, because the only evidence before me[10] supports the Debtor's position that, on the

Petition Date the Lehigh Acres Property was not his principal residence, I find the Mortgage is

subject to modification pursuant to 11 U.S.C. §1322(b)(2) and therefore the Lehigh Acres

Property is subject to valuation.

The parties are directed to contact the courtroom deputy for an evidentiary hearing date

on the valuation of the Lehigh Acres Property.

# # #

Copies furnished to:
Jordan Bublick, Esq.
Stacy Bressler, Esq.

---

[9] Since the Mortgage continues to contain the Second Home Rider, SunTrust's argument seems almost circular.  If
the Mortgage cannot be modified, then the Debtor may only use the Lehigh Acres Property as a second home, which
means the Lehigh Acres Property cannot be the Debtor's principal residence.  Presumably the Debtor will need to
address the Second Home Rider in his plan if he intends to use the Lehigh Acres Property as his home.

[10] Even if the ultimate burden was on the Debtor and not SunTrust, my ruling would not change because there is no
evidence to support SunTrust's argument.